## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff,*<br><br>v.<br><br>TRANSDIGM GROUP INCORPORATED<br><br>*Defendant.* | CASE NO.:1:17-cv-02735-ABJ<br><br>JUDGE: Amy Berman Jackson |

## <u>FINAL JUDGMENT</u>

WHEREAS, Plaintiff, United States of America, filed its Complaint on December 21, 2017, the United States and Defendant, TransDigm Group Incorporated, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, TransDigm agrees to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by TransDigm to assure that competition is substantially restored;

AND WHEREAS, the United States requires TransDigm to make a certain divestiture for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, TransDigm has represented to the United States that the divestiture required below can and will be made and that TransDigm will later raise no claim of hardship or

difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.  Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against TransDigm under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.  Definitions

As used in this Final Judgment:

A.      "Acquirer" means Perusa and MEP KG, or another entity to whom TransDigm divests the Divestiture Assets.

B.      "TransDigm" means Defendant TransDigm Group Incorporated, a Delaware corporation with its headquarters in Cleveland, Ohio, its successors and assigns, and its subsidiaries (including, but not limited to, SCHROTH Safety Products LLC, SCHROTH Safety Products GmbH, and AmSafe, Inc.), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "SCHROTH" means, collectively, SCHROTH Germany and SCHROTH U.S.

D.      "SCHROTH Germany" means SCHROTH Safety Products GmbH, a German limited liability company headquartered in Arnsberg, Germany, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

2

E.      "SCHROTH U.S." means SCHROTH Safety Products LLC, a Delaware limited liability company, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

F.      "Share and Asset Purchase Agreement" means the Share and Asset Purchase Agreement among Takata Europe GmbH, Takata Protection Systems, Inc., Interiors In Flight, Inc., Takata Corporation, TransDigm, and TDG Germany GmbH, dated February 22, 2017.

G.      "Share Transfer Agreement" means the Share Transfer Agreement among Takata Europe GmbH and TDG Germany GmbH, dated February 21, 2017.

H.      "Perusa" means Perusa Partners Fund 2, L.P., a Guernsey limited partnership with its headquarters in St. Peter Port, Guernsey, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

I.      "MEP KG" means SSP MEP Beteiligungs GmbH & Co. KG, a German limited partnership with its headquarters in Munich, Germany, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

J.      "Divestiture Assets" means all SCHROTH shares and assets acquired by TransDigm pursuant to the Share and Asset Purchase Agreement and Share Transfer Agreement including, but not limited to:

1.      SCHROTH Germany's owned real property listed in Appendix A including, but not limited to, SCHROTH Germany's warehouses located at Im Ohl 14, 59757 Arnsberg, Germany;

3

2.      SCHROTH Germany's leases for the real property listed in Appendix A including, but not limited to, SCHROTH Germany's headquarters located at Im Ohl 14, 59757 Arnsberg, Germany;

3.      SCHROTH U.S.'s leases for the real property listed in Appendix A including, but not limited to, SCHROTH U.S.'s facility at 1371 SW 8th Street, Pompano Beach, Florida;

4.      All tangible assets that comprise SCHROTH, including research and development activities; all manufacturing equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property and all assets used by SCHROTH; all licenses, permits, certifications, and authorizations issued by any governmental organization (including, but not limited to, the Federal Aviation Administration and the European Aviation Safety Agency) or industry standard-setting body (including, but not limited to, the Society of Automotive Engineers and the International Organization for Standardization) relating to SCHROTH; all contracts, teaming arrangements, agreements, leases, commitments, and understandings, relating to SCHROTH, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records relating to SCHROTH;

5.      All intangible assets relating to the SCHROTH businesses, including, but not limited to, all patents, licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, design tools and

4

simulation capability, and all manuals and technical information provided to SCHROTH employees, customers, suppliers, agents, or licensees.  Intangible assets also include all research data concerning historic and current research and development efforts relating to the development, manufacture, and sale of airplane restraint systems, designs of experiments, and the results of successful and unsuccessful designs, experiments, and testing.

K.      "Airplane restraint system" means a belt, harness, or airbag used to restrain airplane passengers and crew.

## III.  Applicability

A.      This Final Judgment applies to TransDigm, as defined above, and all other persons in active concert or participation with TransDigm who receive actual notice of this Final Judgment by personal service or otherwise.

B.       If, prior to complying with Section IV and Section V of this Final Judgment, TransDigm sells or otherwise disposes of all or substantially all of its assets or of lesser business units that include the Divestiture Assets, TransDigm shall require the purchaser to be bound by the provisions of this Final Judgment.  TransDigm need not obtain such an agreement from the acquirer of the assets divested pursuant to this Final Judgment.

## IV.  Divestiture

A.      TransDigm is ordered and directed, within 30 calendar days after all necessary regulatory approvals have been obtained from the Committee on Foreign Investment in the United States ("CFIUS") and the German Federal Ministry of Economic Affairs and Energy (the "*Bundesministerium für Wirtschaft und Energie*"), or 30 calendar days after the Court's signing of the Hold Separate Stipulation and Order in this matter, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to Perusa and MEP KG, or to

5

an alternative Acquirer acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances.  TransDigm agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      In the event TransDigm is attempting to divest the Divestiture Assets to an Acquirer other than Perusa and MEP KG, TransDigm promptly shall make known, by usual and customary means, the availability of the Divestiture Assets.  TransDigm shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment.

C.      In accomplishing the divestiture ordered by this Final Judgment, TransDigm shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privileges or work-product doctrine.  TransDigm shall make available such information to the United States at the same time that such information is made available to any other person.

D.      TransDigm shall provide the Acquirer and the United States information relating to the personnel involved in the operation of the Divestiture Assets to enable the Acquirer to make offers of employment.  TransDigm will not interfere with any negotiations by the Acquirer to employ any TransDigm employee whose primary responsibility is the operation of the Divestiture Assets.

E.      For any personnel involved in the operation of the Divestiture Assets that elect employment with the Acquirer, TransDigm shall waive all noncompete and nondisclosure

6

agreements, vest all unvested pension and other equity rights, and provide all benefits to which

the relevant employees would generally be provided if transferred to a buyer of an ongoing

business.  For a period of two (2) years from the filing of the Complaint in this matter,

TransDigm may not solicit to hire, or hire, any such person who was hired by the Acquirer,

unless (1) such individual is terminated or laid off by the Acquirer or (2) the Acquirer agrees in

writing that TransDigm may solicit or hire that individual.  Nothing in this paragraph shall

prohibit TransDigm from maintaining any reasonable restrictions on the disclosure by any

employee who accepts an offer of employment with the Acquirer of TransDigm's proprietary

non-public information that is (1) not otherwise required to be disclosed by this Final Judgment,

(2) related solely to TransDigm's businesses and clients, and (3) unrelated to the Divestiture

Assets.

F.      TransDigm shall permit prospective Acquirers of the Divestiture Assets to have

reasonable access to personnel and to make inspections of the physical facilities of SCHROTH;

access to any and all environmental, zoning, and other permit documents and information; and

access to any and all financial, operational, or other documents and information customarily

provided as part of a due diligence process.

G.      TransDigm shall warrant to the Acquirer that each asset will be operational on the

date of sale.

H.      TransDigm shall not take any action that will impede in any way the permitting,

operation, or divestiture of the Divestiture Assets.

I.      TransDigm shall warrant to the Acquirer that there are no material defects in the

environmental, zoning, or other permits pertaining to the operation of each asset, and that

following the sale of the Divestiture Assets, TransDigm will not undertake, directly or indirectly,

any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

       J.      At the Acquirer's option, and subject to approval by the United States, TransDigm shall enter a Transition Services Agreement for information technology services and other such transition services that are reasonably necessary for the Acquirer to operate the Divestiture Assets for a period of up to twelve months. The United States, in its sole discretion, may approve one or more extensions of this agreement for a total of up to an additional six months. The terms and conditions of any contractual arrangement meant to satisfy this provision must be reasonably related to market conditions. Any amendments or modifications of the Transition Services Agreement may only be entered into with the approval of the United States, in its sole discretion.

       K.      Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by Divestiture Trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business of developing, manufacturing, and selling airplane restraint systems. The divestiture, whether pursuant to Section IV or Section V of this Final Judgment,

       (1)     shall be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business of developing, manufacturing, and selling airplane restraint systems; and

       (2)     shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and TransDigm give TransDigm the ability unreasonably to raise the

Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V.  Appointment of Divestiture Trustee

A.      If TransDigm has not divested the Divestiture Assets within the time period specified in Paragraph IV(A), TransDigm shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets.  The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate.  Subject to Paragraph V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of TransDigm any investment bankers, attorneys, or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.  Any such investment bankers, attorneys, or other agents shall serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C.      TransDigm shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance.  Any such objections by TransDigm must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

9

D.      The Divestiture Trustee shall serve at the cost and expense of TransDigm pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.  The Divestiture Trustee shall account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to TransDigm and the trust shall then be terminated.  The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.  If the Divestiture Trustee and TransDigm are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within 14 calendar days of appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.  The Divestiture Trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to TransDigm and the United States.

E.      TransDigm shall use its best efforts to assist the Divestiture Trustee in accomplishing the required divestiture.  The Divestiture Trustee and any consultants, accountants, attorneys, and other agents retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and TransDigm shall develop financial and other information relevant to such business as the

Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges.  TransDigm shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F.      After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment.  To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court.  Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestiture, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished, and (3) the Divestiture Trustee's recommendations.  To the extent such report contains information that the Divestiture Trustee deems confidential, such report shall not be filed in the public docket of the Court.  The Divestiture Trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such

11

orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H.      If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Divestiture Trustee.

## VI.  Notice of Proposed Divestiture

A.      In the event TransDigm divests the Divestiture Assets to an Acquirer other than Perusa and MEP KG, within two (2) business days following execution of a definitive divestiture agreement, TransDigm or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or Section V of this Final Judgment.  If the Divestiture Trustee is responsible, it shall similarly notify TransDigm.  The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from TransDigm, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer.  TransDigm and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from TransDigm, the proposed Acquirer, any third party, and the Divestiture Trustee, whichever is later, the United States shall provide written notice to TransDigm and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture.  If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to TransDigm's limited right to object to the sale under Paragraph V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated.  Upon objection by TransDigm under Paragraph V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII.  Financing

TransDigm shall not finance all or any part of any purchase made pursuant to Section IV or Section V of this Final Judgment.

## VIII.  Hold Separate

Until the divestiture required by this Final Judgment has been accomplished, TransDigm shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court.  TransDigm shall take no action that would jeopardize the divestiture ordered by this Court.

## IX.  Firewalls

A.      TransDigm shall implement and maintain procedures to prevent the sharing by the TransDigm Executive Vice President currently assigned to SCHROTH, the TransDigm Controller currently assigned to SCHROTH, and the TransDigm Executive Vice President of

Mergers & Acquisitions of competitively sensitive information from SCHROTH with personnel with responsibilities relating to AmSafe, Inc.

B.      TransDigm shall, within thirty (30) calendar days of the Court's entry of the Hold Separate Stipulation and Order, submit to the United States a document setting forth in detail the procedures implemented to effect compliance with this Section.  The United States shall notify TransDigm within ten (10) business days whether, in its sole discretion, it approves or rejects TransDigm's compliance plan.

C.      In the event TransDigm's compliance plan is rejected, the reasons for the rejection shall be provided to TransDigm and TransDigm shall be given the opportunity to submit, within ten (10) business days of receiving the notice of rejection, a revised compliance plan.  If the parties cannot agree on a compliance plan, the United States shall have the right to request that the Court rule on whether TransDigm's proposed compliance plan fulfills the requirements of Paragraph IX(A).

D.      TransDigm may at any time submit to the United States evidence relating to the actual operation of any firewall in support of a request to modify any firewall set forth in this Section.  In determining, in its sole discretion, whether it would be appropriate for the United States to consent to modify the firewall, the United States, shall consider the need to protect competitively sensitive information of SCHROTH and the impact the firewall has had on TransDigm's ability to efficiently manage AmSafe, Inc.

## X. <u>Affidavits</u>

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or Section V, TransDigm shall deliver to the United States an affidavit, signed by

14

TransDigm's Chief Financial Officer and General Counsel, which shall describe the fact and manner of TransDigm's compliance with Section IV or Section V of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts TransDigm has taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by TransDigm, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, TransDigm shall deliver to the United States an affidavit that describes in reasonable detail all actions TransDigm has taken and all steps TransDigm has implemented on an ongoing basis to comply with Section VIII of this Final Judgment.  TransDigm shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in TransDigm's earlier affidavits filed pursuant to this Section within fifteen (15) calendar days after the change is implemented.

C.      TransDigm shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## XI.  **Compliance Inspection**

A.      For the purposes of determining or securing compliance with this Final Judgment,

15

or of any related orders such as any Hold Separate Stipulation and Order, or of determining

whether the Final Judgment should be modified or vacated, and subject to any legally-recognized

privilege, from time to time authorized representatives of the United States Department of

Justice, including consultants and other persons retained by the United States, shall, upon written

request of an authorized representative of the Assistant Attorney General in charge of the

Antitrust Division, and on reasonable notice to TransDigm, be permitted:

> (1) access during TransDigm's office hours to inspect and copy, or at the option of the United States, to require TransDigm to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of TransDigm, relating to any matters contained in this Final Judgment; and

> (2) to interview, either informally or on the record, TransDigm's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by TransDigm.

B.      Upon the written request of an authorized representative of the Assistant Attorney

General in charge of the Antitrust Division, TransDigm shall submit written reports or response

to written interrogatories, under oath if requested, relating to any of the matters contained in this

Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this Section shall

be divulged by the United States to any person other than an authorized representative of the

executive branch of the United States, except in the course of legal proceedings to which the

United States is a party (including grand jury proceedings), or for the purpose of securing

compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by TransDigm to the United

States, TransDigm represents and identifies in writing the material in any such information or

documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal

Rules of Civil Procedure, and TransDigm marks each pertinent page of such material, "Subject

to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the

United States shall give TransDigm ten (10) calendar days notice prior to divulging such material

in any legal proceeding (other than a grand jury proceeding).

## XII.  <u>Notification</u>

A.       Unless such transaction is otherwise subject to the reporting and waiting period

requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15

U.S.C. § 18a (the "HSR Act"), TransDigm, without providing advance notification to the

Antitrust Division, shall not directly or indirectly acquire any assets of or any interest, including

any financial, security, loan, equity, or management interest, in any entity engaged in the

development, manufacture, or sale of airplane restraint systems during the term of this Final

Judgment.

B.       Such notification shall be provided to the Antitrust Division in the same format

as, and per the instructions relating to, the Notification and Report Form set forth in the

Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the

information requested in Items 5 through 8 of the instructions must be provided only about

airplane restraint systems.  Notification shall be provided at least thirty (30) calendar days prior

to acquiring any such interest, and shall include, beyond what may be required by the applicable

instructions, the names of the principal representatives of the parties to the agreement who

negotiated the agreement, and any management or strategic plans discussing the proposed

transaction.  If within the 30-day period after notification, representatives of the Antitrust

Division make a written request for additional information, TransDigm shall not consummate the

proposed transaction or agreement until thirty (30) calendar days after submitting all such

additional information.  Early termination of the waiting periods in this paragraph may be

requested and, where appropriate, granted in the same manner as is applicable under the

requirements and provisions of the HSR Act and rules promulgated thereunder. This Section

shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under

this Section shall be resolved in favor of filing notice.

## XIII.  No Reacquisition

TransDigm may not reacquire any part of the Divestiture Assets during the term of this

Final Judgment.

## XIV.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this

Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and

to punish violations of its provisions.

## XV.  Enforcement of Final Judgment

A.      The United States retains and reserves all rights to enforce the provisions of this

Final Judgment, including its right to seek an order of contempt from this Court.  TransDigm

agrees that in any civil contempt action, any motion to show cause, or any similar action brought

by the United States regarding an alleged violation of this Final Judgment, the United States may

establish a violation of the decree and the appropriateness of any remedy therefor by a

preponderance of the evidence, and TransDigm waives any argument that a different standard of

proof should apply.

18

B.      In any enforcement proceeding in which the Court finds that TransDigm has violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate.   TransDigm agrees to reimburse the United States for any attorneys' fees, experts' fees, and costs incurred in connection with any effort to enforce this Final Judgment.

## XVI.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and TransDigm that the divestiture has been completed and that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XVII.  Public Interest Determination

Entry of this Final Judgment is in the public interest.   The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.   Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _____

Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

_____

United States District Judge